[Civ. No. 15780.   First Dist., Div. One.   Feb. 26, 1954.]

CHARLES UNGER, Appellant, v. HARRY M. ISAACS
et al., Respondents.

Dennis L. Woodman for Appellant.

Foley, Branson & Limpert for Respondents.

McMURRAY, J. pro tem.*—Plaintiff appeals from a judgment for respondents, husband and wife, in a suit for real estate broker's commission.   In the action plaintiff was awarded judgment for $975 against Mrs. Dorothy N. Murphy, a codefendant with respondents.   Mrs. Murphy is not a party to this appeal.

*Assigned by Chairman of Judicial Council.

On July 27, 1951, respondents signed a "Deposit Receipt" presented to them by appellant. This receipt was for $100 and recited that respondents agreed to sell certain property to Mrs. Murphy for $11,900 cash, and a balance of $14,000 to be secured by a deed of trust, and also that respondents agreed to pay a 5 per cent commission thereon to appellant. At this time all the parties knew that Mrs. Murphy intended to make the cash payment with proceeds from an anticipated sale of her residence property in San Mateo.

A week or two thereafter Mrs. Murphy told appellant the anticipated sale had fallen through. Appellant suggested that they see respondents and negotiate an exchange. Such a meeting was held, and Mr. Isaacs said that he would think it over and let them know. Upon returning to appellant's office appellant obtained from Mrs. Murphy an exclusive "Authorization to Sell" her San Mateo property, and the next day had her sign an "Agreement of Exchange." When appellant presented this agreement to Mr. Isaacs he refused to sign it.

Sometime later respondents and Mrs. Murphy effected an exchange of their properties on radically different terms than those set forth in the deposit receipt, or the original exchange proposal.

Appellant brought this action for his commission under the deposit receipt, contending that upon its signing he immediately became entitled to his commission. If appellant had done nothing more after the signing of the deposit receipt he would no doubt have been entitled to his commission (*Ralston* v. *Demirjian*, 86 Cal.App.2d 124 [194 P.2d 41]; *Deeble* v. *Stearns*, 82 Cal.App.2d 296 [186 P.2d 173]), but when he undertook a course of action to substitute an exchange agreement for the contract contained in the deposit receipt it became a question of fact whether or not his acts and conduct showed a rescission or abandonment of that contract. (*Stamler* v. *Kissinger*, 115 Cal.App.2d 171 [251 P.2d 709].) The court was justified in finding that this was not a case of substituted consideration, but was a completely different and inconsistent agreement.

There is testimony by Mr. Isaacs that, after the anticipated sale of Mrs. Murphy's property had failed, appellant referred to the deposit receipt and told him: "That this deal was off and that there was nothing more to do to this." This testimony, if believed and considered with the other evidence before the trial court, was ample to support the implied find-

ing that there was an abandonment of the contract in the deposit receipt. ■ The applicable rule of law is stated in *Tucker* v. *Schumacher,* 90 Cal.App.2d 71, at page 75 [202 P.2d 327]: "It was not necessary to meet and state either in writing or orally that the contract was rescinded. (*Cincotta* v. *Catania,* 95 Cal.App. 99 [272 P. 330].) If the intent to abandon can be ascertained from the acts and conduct of the parties the same result will be attained."

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.